**UNITED STATES of America,
Plaintiff,**

v.

**A. W. HARTWIG, Jeff Tingle, and W. C. Jennings, Defendants.**

**No. 1089.**

United States District Court
D. Montana, Billings Division.

Jan. 6, 1956.

Krest Cyr, U. S. Atty., Butte, Mont., Dale F. Galles, Asst. U. S. Atty., Billings, Mont., Michael J. O'Connell and Frank M. Kerr, Asst. U. S. Attys., Butte, Mont., for plaintiff.

Wood, Cooke & Moulton, Billings, Mont., for defendants.

PRAY, District Judge.

In the above entitled cause this court on October 4, 1950, filed its decision denying the motion to dismiss by defendants; it is a civil action brought by plaintiff under the provisions of § 2(a) (6), Title III, of the Second War Powers Act (56 Stat. 176, 50 U.S.C.A.Appendix, § 633), Sections 7(a) and 7(c) of the Veterans Emergency Housing Act of 1946 (60 Stat. 207, 50 U.S.C.A.Appendix, § 1821 et seq.).

The cause was next before this court on the motion of plaintiff to strike certain portions of the answers filed by the defendants, and also on plaintiff's motion for summary judgment upon part of the plaintiff's claim as set forth in the amended complaint, pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which said part of the plaintiff's claim pertained solely to Yellowstone County Rural Special Improvement District Number 73 tax lien levied and assessed against the 24 dwellings involved herein; pursuant to Section 944.54(g) (ii) of Priorities Regula-

tion 33; that the above mentioned motions were granted in the decision of this court filed on July 30, 1951. The decision of this court of November 21, 1951, denied the motion of defendants seeking to change the language of the above order, and made the finding that the summary judgment was a final judgment.

Thereafter defendants appealed from the partial summary judgment, 9 Cir., 209 F.2d 604, and the opinion filed January 14, 1954, reversed the partial summary judgment and remanded the cause to this court for such further proceedings as may appear to this court to be necessary and proper.

Following the remand of the cause the file reveals that under date of April 16, 1954, the plaintiff filed and served written interrogatories upon defendants A. W. Hartwig and Jeff Tingle; on May 7, 1954, the defendants filed joint answers to the said interrogatories, and by reason of the prior decisions of this court herein referred to it appears that the issues therein were previously disposed of in the pleadings or in the master's report and the decision of the court herein.

Upon motion of plaintiffs this court on November 18, 1954, appointed a special master to hear and determine the issues of fact involved herein, pursuant to the provisions of Rule 53 of the Federal Rules of Civil Procedure, and to report to the court his findings of fact and his conclusions thereon, i. e.,

(a) The amounts, if any, charged to or paid by the purchasers and each of them or their successors in interest, in excess of the maximum authorized sales price of $8,000 for each dwelling as detailed in Exhibit A of the amended complaint on file herein;

(b) The reasonable value of the construction defects and omissions, if any, of each dwelling as detailed in Exhibit A of the amended complaint on file herein.

After a preliminary meeting with counsel for both sides on December 6, 1954, the special master held hearings at

Billings, Montana, on January 17th and 18th, 1955.

The report of the special master herein was filed on May 7, 1955, and after a review of the transcript of the proceedings and exhibits filed in the hearing before the special master, and after due consideration of all the matters therein and briefs of counsel, this court is now of the opinion that the findings of fact and conclusions thereon of the special master should be accepted and approved by this court and incorporated herein and made a part hereof, and such is the order of this court.

In the proceedings before the special master the counsel for defendants interposed numerous objections upon the various grounds stated therein, which said objections were overruled by the special master, and, after due consideration by this court it appears that the said objections should be overruled by this court, especially in view of the said prior decisions of this court, and such is the order of court herein.

The findings of fact and conclusions thereon of the special master are as follows:

### Findings of Fact.

(a) The Special Master makes the following findings of fact as to the amounts, if any, charged to or paid by the purchasers, and each of them, or their successors in interest, in excess of the maximum authorized sales price of $8,000 for each dwelling as described in Exhibit A of the amended complaint on file herein:

1. That said sum of $8,000 was charged to or paid by the purchasers, and each of them, or their successors in interest.

2. That in addition thereto the amount of the special improvement taxes assessed against each lot as hereinafter set forth was charged to or paid by the purchasers, and each of them, or their successors in interest.

3. That the maximum authorized sales price of $8,000 was intended by the parties to include the special improvements for which said special improvement taxes were levied. This finding of fact is compelled by Exhibit 15 in the face of which subsequent conflict in the testimony and argument by learned counsel for the defense must fail. The representations by the defendants that street and utility improvements would be installed by them and included in the sale price and that the purchasers would not be required to pay any special assessments, as made in said Exhibit 15, are clear and unambiguous and were not altered by other exhibits or testimony.

(b) The Special Master makes the following findings of fact as to the reasonable value of the "construction defects and omissions", if any, of each dwelling as described in Exhibit A of the amended complaint on file herein:

1. That the reasonable value of the variations in construction of said dwellings is the same amount as reflected in said Exhibit A as being "construction defects and omissions".

2. That the construction of said dwellings was subject to inspection and was inspected by representatives of the Federal Housing Administration, which representatives indicated both verbally and in writing that the variations were not such as to cause non-compliance with the plans and specifications.

3. That it is the opinion of the Special Master that the approval of the variations by the representatives of the Federal Housing Administration was not within the scope of their authority. (See decision of the above-entitled Court dated July 30, 1951).

### Conclusions.

Wherefore, the Special Master after fully considering the evidence and the objections to the admission thereof and being fully advised in the premises, concludes as follows:

(a) The amounts charged to or paid by the purchasers, and each of them, or their successors in interest (being the Rural Special Improvement District No. 73 tax liens levied and assessed against each lot) in excess of the maximum authorized sales price of $8,000 for each dwelling as described in Exhibit A of the amended complaint on file herein, are as follows:

| Name of purchaser | Lot | Block | Amount |
|---|---|---|---|
| Swan C. Anderson | 17 | 2 | $1,095.97 |
| Leonard O. Apps | 8 | 2 | 1,095.97 |
| E. R. Bahn | 6 | 2 | 1,095.96 |
| R. R. Bailey | 4 | 3 | 1,086.57 |
| J. R. Derden | 2 | 2 | 1,045.59 |
| W. A. Crutcher | 9 | 2 | 1,095.96 |
| Alva A. Harms | 1 | 2 | 1,095.96 |
| Roy W. Hodge | 7 | 2 | 1,095.96 |
| Ivan F. Hutchens | 15 | 2 | 1,095.98 |
| LeRoy D. Jensen | 18 | 2 | 1,095.97 |
| Charles Kuhne | 12 | 2 | 1,095.96 |
| A. R. Marquardt | 7 | 3 | 1,141.28 |
| R. B. McGinnis | 8 | 3 | 1,075.99 |
| F. J. Newman | 4 | 2 | 1,064.14 |
| Leonard W. Noyes | 10 | 2 | 1,080.09 |
| John H. Nickerson | 16 | 2 | 1,095.96 |
| N. A. Potter | 3 | 3 | 1,168.03 |
| Merle R. Price | 14 | 2 | 1,064.14 |
| Jimmie Scott | 1 | 3 | 1,094.64 |
| R. M. Stearns | 13 | 2 | 1,095.97 |
| Louis P. Studer | 5 | 2 | 1,138.40 |
| John C. Wade | 6 | 3 | 1,065.58 |
| Howard A. Walter | 3 | 2 | 1,095.97 |
| Roy N. Watne | 5 | 3 | 1,110.16 |

(b) The reasonable values of the "construction defects and omissions" of each dwelling as described in Exhibit A of the amended complaint on file herein, are as follows:

| Name of purchaser | Lot | Block | Amount |
|---|---|---|---|
| Swan C. Anderson | 17 | 2 | $1,010.33 |
| Leonard O. Apps | 8 | 2 | 1,188.75 |
| E. R. Bahn | 6 | 2 | 1,218.75 |
| R. R. Bailey | 4 | 3 | 1,263.75 |
| J. R. Derden | 2 | 2 | 1,238.75 |
| W. A. Crutcher | 9 | 2 | 1,208.75 |
| Alva A. Harms | 1 | 2 | 1,214.11 |
| Roy W. Hodge | 7 | 2 | 1,197.95 |
| Ivan F. Hutchens | 15 | 2 | 1,164.05 |
| LeRoy D. Jensen | 18 | 2 | 1,268.63 |
| Charles Kuhne | 12 | 2 | 1,219.95 |
| A. R. Marquardt | 7 | 3 | 1,218.75 |
| R. B. McGinnis | 8 | 3 | 1,253.00 |
| F. J. Newman | 4 | 2 | 1,221.00 |
| Leonard W. Noyes | 10 | 2 | 1,171.31 |
| John H. Nickerson | 16 | 2 | 1,262.25 |
| N. A. Potter | 3 | 3 | 1,214.11 |
| Merle R. Price | 14 | 2 | 1,207.95 |
| Jimmie Scott | 1 | 3 | 1,249.80 |
| R. M. Stearns | 13 | 2 | 1,219.95 |
| Louis P. Studer | 5 | 2 | 1,253.00 |
| John C. Wade | 6 | 3 | 1,233.00 |
| Howard A. Walter | 3 | 2 | 1,207.95 |
| Roy N. Watne | 5 | 3 | 1,202.75 |

The foregoing concludes the report of the special master, however, the review of the record by the court reveals that counsel for the respective parties for clarification and distinction of the items set forth in Exhibit A of the amended complaint failed to segregate the issues in this cause into 3 parts, as follows:

1. Rural special improvement district No. 73 tax liens levied and assessed against each of the 24 lots and dwellings involved herein as set forth in paragraph (a) above.

2. Construction defects and omissions as to each of the 24 lots and dwellings involved herein as set forth in paragraph (b) above.

3. Direct overcharges as to 9 of the 24 lots and dwellings involved herein, which are detailed in Exhibit A of the amended complaint and also Plaintiff's Exhibit No. 14, "Item No. 6, excess cost of electric fixtures", in the proceedings before the special master.

Since there was no report made by the special master as to part 3, which is segregated above, it is necessary that this court making the findings and upon consideration of the record herein it is the finding of this court that the following direct overcharges for electric fixtures were in excess of the maximum sales price of $8,000, being detailed in Exhibit A as to 9 of the 24 dwellings, and in the following amounts:

| Name of purchaser | Lot | Block | Amount |
| --- | --- | --- | --- |
| Leonard O. Apps | 8 | 2 | $55.00 |
| E. R. Bahn | 6 | 2 | 55.00 |
| R. R. Bailey | 4 | 3 | 55.00 |
| J. R. Derden | 2 | 2 | 55.00 |
| Charles Kuhne | 12 | 2 | 5.00 |
| Leonard W. Noyes | 10 | 2 | 55.00 |
| Merle R. Price | 14 | 2 | 55.00 |
| John C. Wade | 6 | 3 | 55.00 |
| Howard A. Walter | 3 | 2 | 55.00 |

In the proceedings before the special master some of the vital evidence and stipulations, including documentary evidence, which show a preponderance of proof in favor of the plaintiff, are as follows:

"(Stipulation No. I reads as follows.) Transcript page 11.

"Counsel for plaintiff and counsel for defendants stipulate and agree:

"A. That Rural Special Improvement District No. 73 was initiated by defendants' filing of a petition with the county commissioners of Yellowstone County, Montana, on September 18, 1946, and that thereafter on October 5, 1946, a resolution was adopted by said county commissioners creating Rural Special Improvement District No. 73 to include sanitary sewers, water mains, concrete curbs and gutters, and street paving; that following the creation of said Rural Special Improvement District, the contract was awarded to A. W. Hartwig Pipe Line Construction Company, the lowest and best of three bidders, on November 6, 1946; and that prior to the date of sale of each of the houses as set forth in Exhibit A of the amended complaint the sewer and water lines of said Rural Special Improvement District were installed and completed; that the concrete curbs, gutters and street paving of said Rural Special Improvement District No. 73 were completed in some instances prior to the date of sale as set forth in Exhibit A of the amended complaint, and that in the case of other houses in connection with which these latter improvements were completed after the date of sale set forth in said Exhibit A the purchasers of these houses would testify under oath and on the witness stand that defendant A. W. Hartwig represented to them that the curbs, gutters and street paving would be com-

pleted; that the resolution of the county commissioners levying the tax upon the property within Rural Special Improvement District No. 73 was adopted October 15, 1947, and the resolution of final adoption was on October 23, 1947; that all of the work in connection with said Rural Special Improvement District was completed on or before June 30, 1947; and that defendants A. W. Hartwig and Jeff Tingle were the sole owners of the property within the Rural Special Improvement District No. 73 from the filing of the petition to create said Rural Special Improvement District until the sales to the various owners as set forth in Exhibit A of the amended complaint."

It was stipulated and agreed by counsel that the record from the County Treasurer's office with reference to Special Improvement District No. 73 tax liens read into the record in detail were true and correct as to the purchaser, or successor in interest, lot and block numbers and amount of tax liens assessed and date of payment, if any, by the owner.

As an explanation of the reason for the difference between the amounts as to each dwelling detailed in Exhibit A of the amended complaint on page 1 after the item "Special Improvement Lien and Interest: $1175.49", as compared with the conclusions of the special master of lot 17 block 2, Swan C. Anderson being the purchaser, amount $1,095.97 as shown by the record of the County Treasurer, the difference of $79.52 being interest from the date of sale of the dwelling to Swan C. Anderson on May 27, 1947, until the filing of the original complaint herein on October 8, 1948, and since the issue of interest as to each of the said tax liens levied and assessed was not included in the report of the special master it is necessary that this court make such findings, and, upon consideration of the record herein, it is the finding of this court that interest be paid to the purchasers of each of the said 24 dwellings, or their successors in interest as their interests may appear from the county records with respect to own-ership and date of payment of said tax liens, and such is the order of court herein as to each dwelling detailed in Exhibit A of the amended complaint interest rate being 6% per annum.

It was further stipulated and agreed between counsel that officials of the Federal Housing Administration and the expert witnesses designated would testify that detailed inspections were made of each of the 24 houses listed in Exhibit A and that there were deviations between the plans and specifications as shown by Exhibits Nos. 5 to 13, inclusive.

"(Stipulation No. II reads as follows:

"It is further stipulated and agreed that LeRoy D. Jensen, one of the original purchasers of one of the houses involved as described on page 10 of Exhibit A of the amended complaint, under oath and on the witness stand, would testify that in the office of A. W. Hartwig in Billings, Montana, and in the presence of Mrs. Jensen, as well as Mr. W. C. Jennings, defendant A. W. Hartwig during the course of negotiations for the sale and purchase of Lot 18 in Block 2, Calhoun Lane Subdivision, Billings, Montana, stated to Mr. Jensen that all special improvements were to be paid for by the builder."

"It is further stipulated that the following named original purchasers under oath and on the witness stand would testify that defendant A. W. Hartwig represented to them personally that the special improvements were included in the sales price of $8,000.00, R. R. Bailey, Roy W. Hodge, R. B. McGinnis, F. J. Newman, Mrs. John H. Nickerson, Jimmie Scott and H. A. Walter."

Exhibit No. 15, being Federal Housing Administration Subdivision Form (FHA Form No. 2084), submitted May 18, 1946, for Calhoun Lane West of Billings, Montana, by sponsor of development, Hartwig & Tingle, Fratt Building, Billings, shows as to Item 7. Taxes and Special Assessments: "* * * (b) What special assessments will purchasers be required to pay? *None.* (c) Are all contemplated street and utility improvements installed by developer and

included in sale price? *Yes.* \* \* \* The undersigned represent that to the best of their knowledge and belief the statements, information and conditions contained herein are true and correct, and the required exhibits are attached hereto in duplicate. (Signed) Hartwig & Tingle By A. W. Hartwig, Part."

Exhibit No. 18, "Federal Housing Administration Mortgagee's Application for Mortgage Insurance, case No. 31 006173, (FHA Form No. 2004; Revised June 1944), dated May 18th, 1946, by Security Trust and Savings Bank, Billings, Montana, by ————, President. Mortgagors' Statement signed by A. W. Hartwig, mortgagor, and Verna B. Hartwig, co-mortgagor, May 18, 1946, Mortgagors' Property Description, Lot 8 Bk 2 Bruce 1 Ave., Billings, Yellowstone County, Montana, legal description Lot 8, Block 2— Calhoun Lane Subdivision, Billings, Montana, \* \* \* " "G. Taxes and Insurance \* \* \* 3. Special assessments: Total amount outstanding, $ none . Dated June 6, 1946. Approved Regular BMB Preliminary Examiner."

Exhibit No. 19. "Real Estate Sales Contract. This contract, made and entered into this 27th day of December, 1946, by and between Hartwig & Tingle of the county of Yellowstone, State of Montana, the seller and L. D. and Barbara Jensen of the county of Yellowstone, State of Montana, the buyer,

"Witnesseth: That the sellers have bargained and sold to the said buyers the following described real estate, situated in the county of Yellowstone, State of Montana, to wit: All of lot 18, block 2 of Calhoun Subdivision to Billings, Montana, with all improvements.—at and for the price and sum of Eight Thousand Dollars to be paid as follows: One Thousand Dollars at the signing of this contract, the receipt of which is hereby acknowledged by the seller, and which amount is deposited with Hartwig & Tingle as a part of the consideration of said sale; and the balance whereof is to be paid in the following manner, to-wit: Upon approval and acceptance of an F.H.A. commitment for $5,400.00 and a second mortgage approved and guaranteed by Veterans Administration for $1,-600.00.

"The sellers to furnish within 30 days from the date hereof an abstract of title to said property showing said property to be free of all mortgages, mechanic and tax liens except such as are assumed by the buyer and if upon examination of said abstract it is found that the seller has a good title to said property, then said seller is to execute and deliver to said buyer a good and sufficient deed to said property, conveying to said buyer all the right, title and interest to the said seller in and to said property as per terms and conditions of this sale as above set forth. \* \* \* In Witness Whereof, The said parties have hereunto set their hands and seals the day and year first above written.

"Doris M. McGinnis                LeRoy D. Jensen
   (Witness)
"W. D. Jennings                   Barbara E. Jensen
   (Witness)

                    "Hartwig and Tingle
                    "By A. W. Hartwig."

Defendant Jeff Tingle testified in the special master proceedings that he had complete over-all supervision of the construction work of Hartwig & Tingle on the Calhoun Lane Subdivision and denied that there were any construction defects or omissions in the said dwellings, but contending the alleged defects and omissions were really necessary substitutions because of the condition of material scarcity and price increases and had been approved by the F.H.A. inspectors as to the deviations between the plans and specifications, verbally and by inspection reports and also by Exhibit No. 20 which is the final compliance and inspection report of October 23, 1947. The above contentions were disposed of in a prior decision of this court filed on July 30, 1951, which said decision is hereby made a part of this decision and which was referred to by the Special Master.

Defendant A. W. Hartwig testified he was the contractor who entered into the arrangements with the F.H.A. involving the Calhoun Lane Subdivision but did

not handle the transactions with people who purchased lots, which was handled through the Security Trust and Savings Bank; the deeds were prepared in blank and left with the bank to conclude the details with the purchasers; that his firm requested the Board of County Commissioners to create the special improvement district, and in his examination of the F.H.A. papers he did not find anything about special improvement assessments; that he did not have anything to do with the contract between his firm and LeRoy D. and Barbara E. Jensen which was probably drawn in his office; that the F.H.A. from their constant inspections knew about the special improvements; that he never made any statement to Mr. Jensen, as stated in the stipulation herein, that all special improvements were to be paid for by the builder, and that he had no discussions with Mr. Jensen about the facilities to be provided; that the stipulation "that the following named original purchasers would testify that you represented to them personally that the special improvements were included in the sale price of $8,000.00, and the persons named are R. R. Bailey, Roy W. Hodge, R. B. McGinnis, F. J. Newman, Mrs. John H. Nickerson, Jimmie Scott and H. A. Walter." was a false statement; that he did not make any statement to any one of those persons and did not remember having any conversations with them on that subject; that as a result of the compliance inspection report, Exhibit 20, he got a final settlement from the bank of $8,000 on each of the loans involved; that this lawsuit was commenced in 1948 and prior to that time no demands had been made upon him either to pay the special assessments or to take care of the alleged defects or omissions; that an increase in the maximum sales price to $8,000 was granted by the F.H.A. because of the increase in the cost of materials and heating systems being changed from hot water system to radiant heat and not because of providing a public sewer rather than septic tanks; that the $8,000 did not include the special improvement assessments and the purchas-

ers and owners of the houses were obligated to that special improvement district as far as he was concerned, and he didn't pay any of the special improvement district assessments; that as of May 18, 1946, the date of Exhibit No. 15, there were no special improvement assessments contemplated or levied and no assessments against the properties at that time; that his company was awarded the contract for the contruction of the special improvement district in the fall of 1946 and knew the cost of the installation of the improvements.

It is the opinion of the court from a review of the pleadings, proceedings and evidence herein, and particularly the documentary evidence, that a conclusive preponderance of the evidence has been established by the plaintiff as to all of the issues involved herein, and that the relief prayed for by plaintiff in the amended complaint herein be granted, and such is the order of court herein, including costs. Exceptions allowed counsel.