*Roeder v. J.P. Morgan Chase & Co.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand twenty-two.

PRESENT:

> SUSAN L. CARNEY,
> STEVEN J. MENASHI,
> MYRNA PÉREZ,
> > *Circuit Judges.*

_____

DAVID M. ROEDER, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS, SUSANNE A. ROEDER, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS, RODNEY SICKMANN, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS, DON COOKE, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS, MARK SCHAEFFER, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS,

> *Plaintiffs-Appellants,*

> v.

No. 21-552

J.P. MORGAN CHASE & CO., SUCCESSOR BY MERGER TO CHASE MANHATTAN CORPORATION, JPMORGAN CHASE BANK,

N.A., SUCCESSOR BY MERGER TO CHASE
MANHATTAN BANK,

   *Defendants-Appellees.*

_____

FOR APPELLANTS:      WALTER D. KELLEY, JR. (Scott A.
                 Gilmore, Brent W. Landau, *on the brief*),
                 Hausfeld LLP, Washington, D.C., and
                 Philadelphia, PA; V. Thomas Lankford,
                 Terrance G. Reed, *on the brief*, Lankford &
                 Reed, PLLC, Alexandria, VA.

FOR APPELLEES:       ROMAN MARTINEZ (William J. Trach,
                 Michael F. Houlihan, James E. Brandt,
                 Samir Deger-Sen, *on the brief*), Latham &
                 Watkins LLP, Boston, MA, New York,
                 NY, and Washington, DC.

   Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, *J.*).

   **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 26, 2021, is **AFFIRMED**.

   Plaintiffs-Appellants, certain former U.S. government employees held hostage in Iran for 444 days from 1979 to 1981, and their family members, appeal from the district court's dismissal of their lawsuit against Defendants-Appellees J.P. Morgan Chase & Co. and JPMorgan Chase Bank, successors to Chase Manhattan Corporation and Chase Manhattan Bank (defendants and their corporate predecessors collectively, "Chase"). Plaintiffs sued Chase on behalf of a putative class, alleging that tortious behavior by former Chase executives led to plaintiffs' being taken captive in Iran and the purposeful prolongation of their captivity until their release in early 1981. The district court concluded that plaintiffs' claims against Chase were barred by the applicable statute of limitations. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

### 1. Diligence-discovery rule

Plaintiffs first submit that their claim under 42 U.S.C. § 1985 did not accrue until the December 2019 publication by the *New York Times* of an article exposing details of Chase executives' conduct related to the admission of the Iranian Shah to the United States and the ensuing hostage crisis beginning in November 1979.[1] To support their position that their claims are timely, they invoke the federal diligence-discovery rule, under which "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action."[2] *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). This argument, to which plaintiffs adverted in passing in their complaint, was deemed abandoned by the district court because plaintiffs failed to raise it in their brief opposing Chase's motion to dismiss or during oral argument on that motion in the district court. Plaintiffs now contend that the complaint's reference to the doctrine was sufficient to preserve the argument for appeal. We disagree. The district court correctly treated the argument as abandoned and we therefore treat it here as waived.

Even if not waived, however, plaintiffs' argument regarding the diligence-discovery rule would not persuade us that their action did not accrue until 2019. A federal claim accrues "when the plaintiff knows, or should know, enough to protect himself by seeking legal advice." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011). To save a claim from a statute of limitations defense in reliance on this delayed-accrual doctrine, the plaintiff must have then "act[ed] with diligence," including by consulting with counsel, to "protect the client's interest by investigating the case and determining whether, when, where, and against whom to bring suit." *Id.* Under this doctrine, it is generally the "discovery of the injury, not discovery of the other elements of a claim, that starts the clock." *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019). Here, plaintiffs discovered their injury and undoubtedly knew enough to seek legal advice regarding, for example, a claim for false

---

[1] David D. Kirkpatrick, *How a Chase Bank Chairman Helped the Deposed Shah of Iran Enter the U.S.*, N.Y. Times (Dec. 29, 2019), https://www.nytimes.com/2019/12/29/world/middleeast/shah-iran-chase-papers.html.

[2] In quotations from caselaw and the parties' briefing, this order omits all quotation marks, alterations, and citations, unless otherwise noted.

imprisonment on the day they were released from captivity in January 1981. The statute of limitations on their section 1985 claim thus accrued in 1981, and expired in January 1984, when the applicable three-year statute of limitations ran.

### 2. Equitable tolling

Plaintiffs next argue that the federal equitable-tolling doctrine should apply to save their section 1985 claim from a statute of limitations defense. Again, however, plaintiffs did not advance this argument in the district court, where they instead relied exclusively on equitable exceptions available under New York law. They therefore waived any argument that the federal equitable-tolling exception should apply here.

### 3. Equitable estoppel

As to their claims under state law, plaintiffs acknowledge that the limitations period began to run in January 1981, but they contend that the district court erred by declining to construe their claims as timely under New York's equitable-estoppel doctrine. Equitable estoppel is an "extraordinary remedy." *Pulver v. Dougherty*, 871 N.Y.S.2d 495, 496 (App. Div. 3d Dep't 2009). It precludes a defendant who has taken "affirmative steps to prevent a plaintiff" from bringing a timely claim from arguing that the plaintiff's claim is barred by the statute of limitations. *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006). To invoke equitable estoppel under New York law, plaintiffs must show that (1) the defendants "induced [them] by fraud, misrepresentations or deception to refrain from filing a timely action"; (2) plaintiffs reasonably relied on the defendants' misrepresentations; and (3) plaintiffs exercised "due diligence" in bringing the action "within a reasonable period of time after the facts giving rise to the . . . equitable estoppel claim have ceased to be operational." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007); *see Zumpano*, 6 N.Y.3d at 674.

Even assuming that, through misrepresentations, Chase induced them for nearly four decades to delay filing this action, plaintiffs fail to allege any facts demonstrating their due diligence during that time. Resisting this conclusion, plaintiffs focus particularly on their allegations regarding Chase's hidden efforts to delay their release until the day of President Reagan's inauguration. Significant information about Chase's involvement in the events,

4

however, entered the public record long before publication of the 2019 *New York Times* article. In 1981, an article in the *New York Times* detailed the advocacy of Chase executive David Rockefeller on behalf of the Iranian Shah (whose admittance to the United States provoked the hostage crisis): it described Rockefeller and Henry Kissinger as "two of the Shah's staunchest supporters"; stated that Chase, as Rockefeller's bank, had a "relationship" with the Shah's family; and relayed that Rockefeller "showed himself to be a true friend to the Shah."[3] App. 143–44. It also noted "suggestions that [Rockefeller] acted solely out of concern for Chase Manhattan's profits." *Id.* at 144. Moreover, books published in 2004 and 2007 further revealed Chase executives' alleged lobbying to "forestall" the hostages' release—even going so far as to suggest that the lobbying efforts, partly in coordination with the Reagan presidential campaign, aimed "to keep American hostages imprisoned until Reagan's inauguration." Peter Dale Scott, *The Road to 9/11*, at 90–92 (2007); *see* Robert Parry, *Secrecy & Privilege* 137 (2004). Plaintiffs' suggestion that it would have been impossible before 2019 for them to uncover the actions of the Chase representatives is therefore implausible.

Because plaintiffs fail to demonstrate that they exercised the due diligence that New York's equitable-estoppel exception requires, the district court correctly concluded that Chase should not be estopped from asserting the statute of limitations as a defense.

\* \* \*

We have considered plaintiffs' remaining arguments and find in them no basis for reversal. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Terence Smith, *Why Carter Admitted the Shah*, N.Y. Times (May 17, 1981), https://www.nytimes.com/1981/05/17/magazine/why-carter-admitted-the-shah.html.